IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

2017 JUN 26 PM 2: 24

CLERK'S OFFICE
AT BALTIMORE

BY_____DEPUTY

**DEANNA GANZERMILLER**
636 Falconer Road
Joppatowne, MD 21085
Harford County
     **Plaintiff,**

v.

**GIS BENEFITS, INC.**
422 Wauponsee Street
Morris, IL 60450
     ***Service Through SDAT***
      Mark S. Mettille
      107 Candlelight Lane
      Morris, IL 60450

**GIS BENEFITS – MID-ATLANTIC, LLC**
1429 Williams St.
Baltimore, MD 21230
     ***Serve Resident Agent:***
      Mark Gustin
      1429 Williams St.
      Baltimore, MD 21230

**GIS NATIONAL LLC**
9500 Koger Blvd.
Suite 200
St. Petersburg, FL 33702
     ***Service Through SDAT***
      Patrick Kirchner
      9500 Koger Blvd.
      Suite 200
      St. Petersburg, FL 33702

**MARK GUSTIN**
1429 Williams St.
Baltimore, MD 21230
     **Defendants.**

GLR 17 cv1754

Civil Action No.: _____

**JURY TRIAL REQUESTED**

**COLLECTIVE ACTION - FLSA**

## COMPLAINT FOR OWED WAGES

Plaintiff, DeAnna Ganzermiller ("Ms. Ganzermiller"), brings this lawsuit against her former employers, Defendants GIS Benefits Inc. ("GIS Benefits"), GIS Benefits – Mid-Atlantic, L.L.C. ("GIS Mid-Atlantic"), GIS National LLC ("GIS National"), and Mark Gustin (referred to collectively as "Defendants"), for unpaid overtime wages under the Fair Labor Standards Act ("FLSA"), and Maryland Wage and Hour Law ("MWHL"), and for owed wages for all hours worked, including overtime hours, under the Maryland Wage Payment and Collection Law ("MWPCL").

## PARTIES

### PLAINTIFF

1. Ms. Ganzermiller is an adult resident of the State of Maryland, Harford County.

2. Ms. Ganzermiller was hired by Defendants on October 10, 2016, as an account manager.

3. Ms. Ganzermiller's employment with Defendants ended on April 28, 2017.

### DEFENDANTS

4. Defendant GIS Benefits Inc. is a for-profit Illinois-based corporation.

5. Defendant GIS Benefits Inc. operates its Mid-Atlantic office in Baltimore, Maryland.

6. Defendant GIS Benefits Inc. conducts business and has clients throughout the State of Maryland.

7. Defendant GIS Benefits is a "Non-Medical General Agency specializing in: Offering Ancillary Employee Benefits from top-tier carriers, Consolidated Marketing, Consolidated Administration, Combined Billing, Technology, Enrollment and Exclusive Voluntary Products." *See* http://www.gisbenefits.net/.

8. Defendant GIS Benefits engages in interstate commerce by operating offices in Atlanta, Georgia; Lake Oswego, Oregon (the Portland and Seattle Office); Morris, Illinois (the Chicago

Office); two locations in St. Petersburg, Florida (the Florida and Midsouth Offices); Stony Point, New York (the New York Office); Baltimore, Maryland (the Mid-Atlantic Office); Chatham, New Jersey (the Northeast Office); Sugar Land, Texas (the South Texas Office); Naperville, Illinois (the Wisconsin Office); and, Prairie Village, Kansas (the Kansas City Office). *See* http://www.gisbenefits.net/locations/.

9. Defendant GIS Benefits also operates out of Northern California; Southern California; North Texas; Boston, Massachusetts; and, the Carolinas. *See* http://www.gisbenefits.net/locations/.

10. Defendant GIS Benefits advertises openings in their regional offices on the "Careers" section of the GIS Benefits website. As of June 23, 2017, the GIS Benefits website stated that Defendant GIS Benefits was, "actively seeking Dales Representatives in the following cities: Dallas; Charlotte; Phoenix; Los Angeles; Denver; Detroit; Atlanta; Cincinnati; Cleveland / Pittsburgh; Minneapolis; St. Louis / Kentucky." *See* http://www.gisbenefits.net/careers/.

11. Defendant GIS Benefits issues monthly sales reports detailing the sales made by all of GIS Benefits' "geographical offices".

12. For instance, in Defendant GIS Benefits' February 2017 Sales Report, Defendant GIS Benefits stated: "Twenty sales reps covering fifteen geographical offices, including the Mid-Atlantic office, sold at least one case for February 1st effective date."

13. The February 2017 then lists all 19 GIS Benefit regional offices and their total sales for February 2017.

14. In 2017, Defendant GIS Benefits made $2,360,233.00 in new sales, including revenue made from sales made in Maryland.

15. Defendant GIS Benefits, as of February 2017, made $25,297,709.00 in year to date sales, including revenue made from sales in Maryland.

3

16. Defendant GIS Mid-Atlantic is a Maryland-based corporation.

17. Defendant GIS Mid-Atlantic is a regional branch of Defendant GIS Benefits and is operated under the direction, policies, and procedures of Defendant GIS Benefits.

18. Defendant GIS Mid-Atlantic operates under the trade name GIS Benefits.

19. Defendant GIS Mid-Atlantic, as of February 2017, made $2,565,659.00 in year to date sales.

20. Defendant GIS Mid-Atlantic's sales are included in Defendant GIS Benefits' gross revenue.

21. Defendant Mark Gustin is the owner and President of Defendant GIS Mid-Atlantic.

22. Defendant Gustin interviewed Ms. Ganzermiller.

23. On September 21, 2016, Defendant Gustin sent Ms. Ganzermiller an offer letter offering her the position of account manager with an annual salary of $50,000.00, paid at a rate of $2,0833.33 semi-monthly, plus quarterly bonuses.

24. The offer letter directed Ms. Ganzermiller to call Defendant Gustin with any questions about Defendants' offer of employment.

25. The offer letter stated: "We are excited that you have chosen to join the GIS Benefits (GIS) Team."

26. The offer letter also stated, "GIS offers its full-time Team Members the GIS Benefits Program which includes Major Medical, Dental, Long Term Disability, Basic Life Insurance, a SIMPLE IRA Contribution plan and vacation."

27. In order to accept Defendants' offer of employment, Ms. Ganzermiller was instructed to sign a statement at the bottom of the second page of the offer letter which stated: "* I, DeAnna

Ganzermiller, acknowledge and accept the foregoing. I understand that no contract of employment exists between Group Insurance Services, Inc. and me and that my employment is "At Will".

28. Defendant GIS Benefits operated the GIS Benefits Program.

29. Ms. Ganzermiller sent her enrollment documents to Kara Valentine, Director of Human Resources for GIS Benefits, Inc. in Illinois, to enroll in the GIS Benefits Program.

30. Ms. Ganzermiller became a participating member in the GIS Benefits Program in January 2017.

31. Defendant Gustin hired Ms. Ganzermiller.

32. Defendant Gustin is listed as the contact person for the GIS Mid-Atlantic office on Defendant GIS Benefits' website.

33. Defendant Gustin was Ms. Ganzermiller's supervisor.

34. On April 28, 2017, Defendant Gustin terminated Ms. Ganzermiller.

35. On April 28, 2017, Defendant Gustin sent Ms. Ganzermiller a letter outlining her final paycheck, including paid time off.

36. Defendant GIS National is a for-profit, Florida based corporation.

37. Defendant GIS National issued Ms. Ganzermiller's paychecks.

38. Defendant GIS National issued Ms. Ganzermiller's W-2.

39. Mark Mettille, owner of Defendant GIS Benefits, is a Managing Member of Defendant GIS National.

40. Mark Gustin, owner of GIS Mid-Atlantic, is a Managing Partner of GIS National.

41. Upon information and belief, Defendant GIS National issues the paychecks to all similarly situated account managers employed by Defendants at Defendants' offices located throughout the United States.

42. Defendants GIS Benefits, GIS Mid-Atlantic, and GIS National jointly determined, shared, and allocated the power to direct, control, supervise, and/or pay Ms. Ganzermiller and similarly situated employees.

43. Defendants GIS Benefits, GIS Mid-Atlantic, and GIS National jointly shared the ability to hire and fire Ms. Ganzermiller and modify the terms of her employment and that of similarly situated employees.

44. GIS Benefits was incorporated in Illinois on April 17, 2006.

45. The Articles of Incorporation for GIS National were filed on April 8, 2013 in Florida.

46. The Articles of Organization for GIS Mid-Atlantic were filed on May 20, 2013 in Maryland.

47. Upon information and belief, Defendant GIS Benefits permanently operates and controls GIS National and GIS Benefits and has done so since their formation in April 2013 and May 2013 respectively.

48. The operations of Defendant GIS Mid-Atlantic are controlled by Defendant GIS Benefits, which set the policies and procedures by which Defendants GIS Benefits and GIS Mid-Atlantic operate.

49. Defendant GIS Benefits set the policies and procedures by which all of its regional offices operate, throughout the United States.

50. For instance, Defendant GIS Benefits issued the holiday schedule by which all GIS offices operated.

51. Defendant GIS Benefits set the Paid Time Off policy for all GIS offices throughout the United States, including the Mid-Atlantic office. For instance, in approximately January 2017, Kara Valentine, Director of Human Resources for GIS Benefits, Inc. in Illinois, sent an email to

all of Defendants' employees that stated: "As we begin a new year, I wanted to remind everyone how Paid Time Off (PTO) works for all locations of GIS."

52. Defendant GIS Benefits Human Resources office served as the human resources office for all GIS Benefits locations throughout the United States, including the Mid-Atlantic office.

53. For example, in the January 2017 PTO email, Ms. Valentine provides the following instructions regarding how to request PTO: "The process for requesting a PTO day is to complete the attached PTO Request Form and have your supervisor sign off on the days that you have requested. The moment the supervisor signs off on the days, they are approved. Once approved, please send the executed PTO Request Form to me for processing. I handle all of the tracking throughout the year, so it is important that I stay informed. All PTO time that is approved must filter through me."

54. Ms. Ganzermiller and similarly situated employees worked overtime hours on premises controlled by GIS Mid-Atlantic and other regional offices throughout the United States, in connection with the policies and procedures set by GIS Benefits.

55. Defendant GIS Benefits set the policies and procedures that governed Ms. Ganzermiller's employment with Defendants, including the policies and procedures governing the payment of Ms. Ganzermiller's wages and her hours worked.

56. Defendants GIS Benefits, GIS Mid-Atlantic, and GIS National are interrelated entities and are not completely dissociated.

57. Defendants GIS Benefits, GIS Mid-Atlantic, and GIS National are interrelated entities are a single-enterprise operating for the common purpose of selling insurance.

58. The Defendants jointly determine, share, or allocate responsibility over functions ordinarily carried out by an employer, such as handling payroll; providing workers' compensation

7

insurance; paying payroll taxes; or providing the facilities, equipment, tools, or materials necessary to complete the work.

59. For instance, Defendants GIS Benefits and GIS Mid-Atlantic allocate the handling of payroll and payroll taxes for Ms. Ganzermiller and similarly situated employees in Maryland to GIS National.

60. Upon information and belief, Defendant GIS Benefits allocates the handling of payroll and payroll taxes for similarly situated employees in its regional offices throughout the United States to GIS National.

61. Defendant GIS Mid-Atlantic provides the facilities, equipment, and tools, necessary for Ms. Ganzermiller and similarly situated employees in Maryland to complete their work.

62. Defendant GIS Benefits provides and operates the GIS Benefits website, located at http://www.gisbenefits.net/, which Ms. Ganzermiller and similarly situated employees in Maryland and throughout the United States utilized to complete their work.

63. Defendant GIS Benefits provides and operates the GIS Connect One System, which Ms. Ganzermiller and similarly situated employees in Maryland and throughout the United States utilized to complete their work.

64. Defendant GIS Benefits provides and operates the GIS Benefits website, located at http://www.gisbenefits.net/ which Defendants' customers in Maryland and throughout the United States utilize to enroll in and utilize Defendants' services.

65. Defendant GIS Benefits provides and operates the GIS Connect One System, which Defendants' customers in Maryland and throughout the United States utilize.

66. Defendant GIS Benefits provides the forms utilized by Defendant GIS Mid-Atlantic and all regional offices, such as the "Enrollment Form For Group Insurance."

8

67. GIS Mid-Atlantic has Workers' Compensation coverage in Maryland through Hartford Insurance Co. of Midwest with employer locations listed as 1244 Light St., Baltimore, MD 21230-4310 and 1414 Key Hwy Ste 300m, Baltimore, MD 21230-5142.

68. GIS National has Workers' Compensation coverage in Maryland through Trumbull Insurance Co. with an employer location listed as 1414 Key Hwy Ste 300m, Baltimore, MD 21230-5142, the same location listed for GIS Mid-Atlantic's Workers' Compensation coverage.

69. Defendants GIS Benefits, GIS Mid-Atlantic, GIS National, and Mark Gustin, individually, were Ms. Ganzermiller's employers within the meaning of the terms of the FLSA, 29 U.S.C. § 203(d), the MWHL, Md. Ann. Code, Labor & Employment, §3-401(b), and the MWPCL, Md. Ann. Code, Labor & Employment, §3-501.

70. Defendants GIS Benefits, GIS Mid-Atlantic, GIS National, and Mark Gustin, were Ms. Ganzermiller's joint and co-employers within the meaning of the terms of the FLSA, 29 U.S.C. § 203(d), the MWHL, Md. Ann. Code, Labor & Employment, §3-401(b), and the MWPCL, Md. Ann. Code, Labor & Employment, §3-501.

71. Defendant GIS Benefits conducted business in the State of Maryland directly by holding weekly conference calls with GIS Mid-Atlantic.

72. Defendant GIS Benefits conducted business in the State of Maryland directly by supervising and directing the operation of GIS Mid-Atlantic and its employees'.

73. Defendant GIS Benefits conducted business in the State of Maryland, through its agent GIS Mid-Atlantic, by acquiring Maryland based customers.

74. Defendant GIS Benefits conducted business in the State of Maryland by making profit off of Maryland based customers acquired through its agent GIS Mid-Atlantic.

75. Defendants' customers, including Defendants' Maryland customers, utilize Defendants' services through Defendant GIS Benefits software known as GIS Connect One System.

76. Defendant GIS Benefits operates the website http://www.gisbenefits.net/.

77. Through http://www.gisbenefits.net/, Defendant GIS Benefits, directly and through its agents, acquires customers in Maryland and throughout the United States.

78. According to GIS Benefits' website, its customers, including those in Maryland can utilize the GIS Connect One System to enroll online. Specifically, the GIS Benefit website states, "The GIS Connect One System allows employer groups of any size to utilize a simple online enrollment system. Utilize our expertise with Benefits Connect and let us show you how easy online enrollment can be." *See* http://www.gisbenefits.net/our-services/.

79. Defendant GIS Benefits conducts business in the State of Maryland by allowing customers to enroll in and utilize Defendants' services through the GIS Benefits website.

80. Defendant GIS Benefits conducts business in the State of Maryland by setting the wage policies that dictated Ms. Ganzermiller's and other similarly situated employees' rate of pay for work performed in Maryland and through the United States.

81. Defendant GIS National paid Ms. Ganzermiller's wages for work she performed in Maryland for Defendants.

82. Defendant GIS National issued Ms. Ganzermiller's W-2 for work she performed in Maryland for Defendants.

83. Defendants are subject to the FLSA, MWHL, and the MWPCL for owed wages, including unpaid overtime wages.

84. Defendants employed and paid Ms. Ganzermiller as their employee from October 10, 2016 until April 28, 2017.

85. Defendants did not pay Ms. Ganzermiller for all hours worked.

86. Defendants did not pay Ms. Ganzermiller overtime wages for her overtime hours worked in excess of 40 hours per workweek.

87. Throughout Ms. Ganzermiller's employment with Defendants, Defendants failed to pay Ms. Ganzermiller overtime wages at a rate of one and one-half times her regular rate of pay for all hours worked in excess of 40 hours per workweek, as required by the FLSA, 29 U.S.C. § 207 and the MWHL, Md. Ann. Code, Labor & Employment, §3-415.

88. Defendants regularly required Ms. Ganzermiller to work in excess of 40 hours per workweek.

89. Defendants refused to timely pay Ms. Ganzermiller all of her owed wages, including all overtime wages, in violation of the MWPCL, Md. Code Ann., Labor & Empl. §§ 3-502 and 3-505.

90. Ms. Ganzermiller's employment with Defendants ended on April 28, 2017.

91. Defendants have not paid Ms. Ganzermiller all of her owed wages for all hours worked and all of her owed overtime wages.

92. Pursuant to the MWPCL, Md. Code Ann., Labor & Empl. § 3-502, Defendants were obligated to pay Ms. Ganzermiller for all wages earned on a regular basis, including all overtime wages.

93. Defendants' actions in failing to pay Ms. Ganzermiller all of her owed wages for all hours worked, including all owed overtime wages for all overtime hours worked, were willful violations of the MWPCL.

94. Over two weeks have elapsed from the date on which Defendants were required to have paid Ms. Ganzermiller all owed wages for all hours worked, including all owed overtime wages, as required by the MWPCL, Labor and Employment § 3- 507.2(a).

11

95. Upon information and belief, Defendants did not post and keep posted notices explaining the requirements of the FLSA, as required by 29 C.F.R. § 516.4, or the MWHL, Md. Ann. Code, Labor & Employment, §3-423(b).

96. Defendants' failure to pay Ms. Ganzermiller all wages owed for all hours worked, including all overtime wages, was intentional and willful.

97. Defendants' failure to pay Ms. Ganzermiller all wages owed for all hours worked, including all overtime wages, was not the result of a bona fide dispute.

## FACTS

98. On September 9, 2016, Ms. Ganzermiller applied for the client specialist position with Defendants via the website LinkedIn.

99. Ms. Ganzermillers' September 9, 2016 application was sent to Defendant Gustin via email to his email address, mark.gustin@gisbenefits.net.

100. On Friday, September 16, 2016, Defendant Gustin sent Ms. Ganzermiller an email in which he stated:

> Deanna,
>
> Thank you very much for your interest in joining our team here at GIS. I would love to schedule a brief conversation to connect on the details of the position and see if there may be a mutual fit here.
>
> Are you available for a call on Monday at 1:00 or 5:00?
>
> Please let me know and have a great weekend, thanks Deanna.
>
> Mark Gustin

101. On September 19, 2016, Ms. Ganzermiller interviewed with Defendant Gustin.

102. On September 21, 2016, Defendant Gustin sent Ms. Ganzermiller an offer letter offering her the position of account manager with an annual salary of $50,000.00, paid at a rate of $2,0833.33 semi-monthly, plus quarterly bonuses.

103. The offer letter directed Ms. Ganzermiller to call Defendant Gustin with any questions about Defendants' offer of employment.

104. Ms. Ganzermiller was hired by Defendants on October 10, 2016, as an account manager.

105. Ms. Ganzermiller's job duties as an account manager consisted primarily of data entry, checking group submission paperwork to ensure all necessary information was included, answering customer phone calls, and client support.

106. Ms. Ganzermiller did not exercise any independent discretion or judgment as an account manager.

107. Ms. Ganzermiller did not supervise any other employee's as an account manager.

108. Ms. Ganzermiller reported directly to her supervisor Eleanor Wilson, who oversaw all of Ms. Ganzermiller's work.

109. Defendants' willfully and intentionally misclassified Ms. Ganzermiller as exempt from overtime wages.

110. At all times relevant, Ms. Ganzermiller, was a non-exempt employee under the FLSA and MWHL, entitling her to be paid overtime wages at a rate of one and one-half times her regular rate of pay for all hours worked in excess of 40 hours per workweek.

111. Defendants regularly required Ms. Ganzermiller to work over 40 hours per week.

112. Ms. Ganzermiller's regular schedule was 8:00 a.m. to approximately 6:30 p.m.

113. At least four nights per week, Ms. Ganzermiller would work from home, responding to emails and client inquiries from approximately 8:00 p.m. until midnight, sometimes later.

114. Accordingly, Ms. Ganzermiller regular worked as many as 68 hours per week, sometimes more.

115. Defendant knew the number of hours Ms. Ganzermiller was working because her emails were time stamped.

116. Defendants knew the number of hours Ms. Ganzermiller was working because in approximately January 2017, Ms. Ganzermiller spoke with her supervisor, Eleanor Wilson, and informed her that she was working up to 70 hours per week.

117. All account managers employed by Defendants, throughout the United States, were similarly situated to Ms. Ganzermiller because they were subjected to the same employment policies and procedures as Ms. Ganzermiller, including the policies and procedures governing their wages.

118. For example, all of the account managers employed by Defendants were salaried employees.

119. All account managers were subject to the same holiday schedule, set by Defendant GIS Benefits.

120. All account managers were subject to the same PTO policy, set by Defendant GIS Benefits.

121. All account managers reported to Defendants Human Resources offices operated by Defendant GIS Benefits and located in GIS Benefits headquarters in Morris, Illinois.

122. All account managers employed by Defendants had the same job duties.

123. Every Tuesday, Ms. Ganzerrmiller and the similarly situated account managers were required to participate in conference calls with all of the other account managers employed by Defendants in every office throughout the United States.

124. Over 40 people participated in the weekly account manager conference calls.

125. Mark Mattel, the owner of GIS Benefits, was in charge of and participated in the weekly conference calls.

126. In February 2017, Defendants held a training in Tampa Florida for Defendants' account managers employed in all of Defendants regional offices, including but not limited to the Mid-Atlantic Office in Maryland.

127. The February 2017 training was intended to train Defendants' account managers on how to use the "benefits Connect" system.

128. Over 30 account managers employed in Defendants' regional offices located throughout the United States, including Maryland, attended the February 2017 training.

129. Ms. Ganzermiller attended the February 2017 training in Tampa Florida.

130. The February 2017 training in Tampa Florida was coordinated by Kim Jasniewski, Director of Account Management & Implementation for GIS Benefits of Florida, Inc.

131. Account managers, including Ms. Ganzermiller, were not required to clock-in and clock-out at the beginning and end of their workday.

132. Upon information and belief, Defendants did not seek the advice and counsel of an attorney knowledgeable about the requirements of the FLSA, MWHL, or MWPCL prior to deciding not to pay Plaintiffs all owed wages for all hours worked, including overtime wages.

133. Defendants' failure to pay Ms. Ganzermiller all wages owed, including overtime wages, was intentional and willful.

134. Defendants' failure to pay Ms. Ganzermiller all wages owed was not the result of a bona fide dispute.

<u>**VENUE**</u>

135. Original jurisdiction in this Court is granted by the FLSA, 29 U.S.C.A. § 207 *et seq.* This Court also has subject matter jurisdiction to hear this Complaint and adjudicate the claims stated herein under 28 U.S.C. § 1331.

136. This Court has personal jurisdiction over all Defendants under Md. Code. Courts & Jud. Procs. Article ("CJP") § 6-103(b)(1) because Defendants directly and through their agents engaged in conduct that culminated in purposeful activity within Maryland.

137. Venue is appropriate in this jurisdiction based upon the occurrence of the unlawful events, central to this lawsuit, within this District in the State of Maryland.

<u>**COLLECTIVE ACTION ALLEGATIONS UNDER THE FLSA**</u>

138. This action is concurrently maintainable as an "opt-in" collective action pursuant to 29 U.S.C.A. § 216(b) as to the claims for unpaid overtime wages, liquidated damages, and attorneys' fees under the FLSA.

139. Ms. Ganzermiller consents to be a party plaintiff in this matter. Ms. Ganzermiller's consent form is filed concurrently with this Complaint.

140. In addition to Ms. Ganzermiller, there are other similarly situated current and former employees of Defendants who are or were employed as account managers in Defendants' offices located throughout the United States and were required to work overtime hours without being paid overtime wages at a rate of one and one-half times their regular rate of pay for all overtime hours worked.

141. The similarly situated employees were subject to the same pay policies and practices as Ms. Ganzermiller.

142. Those similarly situated current and former employees were subjected to the same unlawful pay policies and practices by the Defendants, including but not limited to:

    a. being required to work up to 70 hours per week;

    b. being willfully and intentionally improperly misclassified as exempt employees;

    c. being required to work from home and to send time stamped emails to Defendants and Defendants' customers after the end of their workday; and

    d. not being paid overtime wages for all overtime hours worked, even though they were non-exempt employees.

143. These similarly situated employees are known to Defendants and are readily identifiable and locatable through Defendants' records.

144. The similarly situated employees would benefit from the issuance of a court-supervised notice, granting them the opportunity to join this lawsuit.

145. Upon information and belief, others will choose to join Ms. Ganzermiller in this action against Defendants and opt-in to this lawsuit to recover unpaid wages, including overtime wages and other available relief.

146. These similarly situated employees should be notified of and allowed to opt into this action, pursuant to 29 U.S.C.A. §216(b), for the purpose of adjudicating their claims for unpaid overtime wages, liquidated damages, and attorneys' fees under the FLSA.

## VIOLATIONS OF LAW

### COUNT I  –  VIOLATIONS OF THE FLSA, FAILURE TO PAY THE REQUIRED OVERTIME WAGE

147. All allegations of the Complaint are expressly incorporated herein.

148. From October 10, 2016 until April 28, 2017, Ms. Ganzermiller was required to work in excess of 40 hours per workweek.

149. At all times relevant, by virtue of her job duties, Ms. Ganzermiller was a non-exempt employee under the FLSA, entitling her to be paid overtime wages at a rate of one and one-half times her regular rate of pay for all hours worked in excess of 40 hours per workweek.

150. Defendants willfully and intentionally failed to pay Ms. Ganzermiller overtime wages at a rate of one and one-half times her regular rate of pay for all overtime hours worked, in excess of 40 hours per workweek.

151. Defendants violated the FLSA by willfully and intentionally failing and refusing to pay Ms. Ganzermiller overtime wages at a rate of one and one-half times her regular rate of pay for all overtime hours worked in excess of 40 hours per workweek, as required by the FLSA, 29 U.S.C. § 207.

152. By reason of the aforesaid violations of the FLSA, Defendants are liable to Ms. Ganzermiller in an amount equal to the unpaid overtime, liquidated damages, all other applicable penalties, attorneys' fees and costs, and pre- and post- judgment interest.

153. Relief requested – Ms. Ganzermiller requests that: (a) Defendants be ordered to pay her all overtime wages for all overtime hours worked; (b) liquidated damages be assessed against Defendants; (c) she be awarded pre- and post- judgment interest; and (d) she be awarded her attorneys' fees and costs. In addition, Ms. Ganzermiller requests that an Order issue certifying this count as a collective action and enjoining Defendants to comply with the FLSA.

## COUNT II – VIOLATIONS OF THE MWHL, FAILURE TO PAY THE REQUIRED OVERTIME WAGE

154. All allegations of the Complaint are expressly incorporated herein.

155. From October 10, 2016 until April 28, 2017, Ms. Ganzermiller was required to work in excess of 40 hours per workweek.

156. Defendants willfully and intentionally failed to pay Ms. Ganzermiller overtime wages at

a rate of one and one-half times her regular rate of pay for all overtime hours worked, in excess of 40 hours per workweek.

157. At all times relevant, by virtue of her job duties, Ms. Ganzermiller was a non-exempt employee under the MWHL, Labor and Employment §§3-403, 3-415(a), entitling her to be paid overtime wages at a rate of one and one-half times her regular rate of pay for all hours worked in excess of 40 hours per workweek.

158. Defendants willfully and intentionally violated the provisions of the Maryland Labor & Employment Code by failing to pay Ms. Ganzermiller for all overtime hours worked at a rate of one and one-half times her regular rate of pay for all hours worked in excess of 40 hours per workweek.

159. Defendants' unlawful acts deprived Ms. Ganzermiller overtime wages in amounts to be determined at trial, and she is entitled to recovery of such amounts, plus liquidated damages, attorneys' fees, and costs.

160. There is no bona fide dispute that Ms. Ganzermiller is owed the overtime wages.

161. Relief requested – Ms. Ganzermiller requests that: (a) Defendants be ordered to pay her all overtime wages owed at a rate of one and one-half times her regular rate of pay for all overtime hours worked; (b) that she be awarded an additional amount of liquidated damages; (c) that she be awarded pre- and post- judgment interest; and (d) that she be awarded her attorneys' fees and costs.

## COUNT III – VIOLATIONS OF THE MWPCL, FAILURE TO TIMELY PAY ALL WAGES DUE

162. All allegations of the Complaint are expressly incorporated herein.

163. From October 10, 2016 until April 28, 2017, Ms. Ganzermiller was required to work in excess of 40 hours per workweek.

164. At all times relevant, by virtue of her job duties, Ms. Ganzermiller was a non-exempt

employee under the MWHL, Labor and Employment §§3-403, 3-415(a), entitling her to be paid overtime wages at a rate of one and one-half times her regular rate of pay for all hours worked in excess of 40 hours per workweek.

165. Defendants willfully and intentionally failed to pay Ms. Ganzermiller all of her owed wages for all of the hours she worked.

166. Defendants willfully and intentionally failed to pay Ms. Ganzermiller overtime wages at a rate of one and one-half times her regular rate of pay for all overtime hours worked, in excess of 40 hours per workweek.

167. Defendants have not paid Ms. Ganzermiller all of her owed wages.

168. Pursuant to the MWPCL, Md. Code Ann., Labor & Empl. § 3-502, Defendants were obligated to pay Ms. Ganzermiller for all wages earned on a regular basis, including overtime wages.

169. Defendants' actions in failing to pay Ms. Ganzermiller all of her owed wages, including all overtime wages for all overtime hours worked, were willful violations of the MWPCL.

170. Over two weeks have elapsed from the date on which Defendants were required to have paid Ms. Ganzermiller all owed wages, including all owed overtime wages, as required by the MWPCL, Labor and Employment § 3- 507.2(a).

171. There is no bona fide dispute as to the wages owed to Ms. Ganzermiller.

172. Relief requested – Ms. Ganzermiller requests that: (a) Defendants be ordered to pay her all owed wages, including all overtime wages; (b) that she be awarded treble damages; (c) that she be awarded pre- and post- judgment interest; and (d) that she be awarded her attorneys' fees and costs.

Respectfully submitted,

_____

Richard P. Neuworth #01052
Lebau & Neuworth, LLC
606 Baltimore Avenue – Suite 201
Towson, Maryland 21204
Tel.  443.273.1202
Fax.  410.296.8660
rn@joblaws.net


_____

Devan M. Wang, Bar #30211
Lebau & Neuworth, LLC
606 Baltimore Avenue – Suite 201
Towson, Maryland 21204
tel. 443.273.1207
fax. 410.296.8660
dw@joblaws.net

*Attorneys for the Plaintiff*


## REQUEST FOR JURY TRIAL

Plaintiff requests that a jury of her peers hear and decide all claims asserted in this Complaint.


_____

Devan M. Wang, #30211
*Attorney for the Plaintiff*

21